# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

MELISSA A. BERRY, *et al.*,                :

      Plaintiffs,                :        Case No. 3:10cv00081

 vs.                :        Magistrate Judge Sharon L. Ovington
                                         (By full consent of the parties)

DAVID S. CAHOON, *et al.*,                :

      Defendants.                :

## DECISION AND ENTRY

## I.    INTRODUCTION

Plaintiffs Melissa A. Berry and her mother, Judith A. Berry, bring this case against

Defendants David S. Cahoon, Steven E. Terrill, James Woodward, American Protective

Agency, Inc., and John and Jane Does.[1]  (Doc. #24 at 1-2).  Defendant Cahoon is Plaintiff

Melissa Berry's former husband.  Defendants Steven E. Terrill and James Woodward are

employees or agents of American Protective Agency, Inc.

Plaintiffs allege that sometime between May 25, 2007 and July 29, 2007,

Defendants installed, or caused others to install, video cameras with microphones in the

marital home of Plaintiff Melissa Berry and Defendant David Cahoon for Defendants'

---

[1]  Richard R. Hazen, Brent Thurston, and Beavercreek Christian Church were also named
as Defendants, but have since been dismissed voluntarily by Plaintiffs.  (Docs. #57, 58, 71).
Accordingly, Defendant Beavercreek Christian Church's Motion for Summary Judgment (Doc.
#62) is rendered moot and denied as such.

use.  (Doc. #24).

Plaintiffs bring claims for alleged violations of the Electronic Communications Privacy Act, invasion of privacy, and intentional infliction of emotional distress.  (Doc. #24).  Defendant Cahoon has raised counterclaims against Plaintiff Melissa Berry for breach of contract and intentional infliction of emotional distress.  (Doc. #7).

The case is presently before the Court upon Defendants Terrill, Woodward, and American Protective Agency, Inc.'s Sealed Motion for Summary Judgment (Doc. #68), Plaintiffs' Memorandum in Opposition (Doc. #73), Defendants Terrill, Woodward, and American Protective Agency, Inc.'s Reply (Doc. #74), and the record as a whole.

## II.    MOTION FOR SUMMARY JUDGMENT

Defendants argue summary judgment should be granted in their favor pursuant to Fed. R. Civ. P. 56. (Doc. #68).  Plaintiffs argue summary judgment is not proper because "the issues in dispute are questions of fact, not law, upon which reasonable minds could easily reach varying opinions." (Doc. #73 at 1).

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party moving for summary judgment bears the initial burden of identifying those parts of the record that demonstrate the absence of any genuine issue of material fact.  *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389-90 (6th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  Once the party moving for summary judgment has satisfied this

burden, the non-moving party cannot rest upon the mere allegations in the Complaint or upon denials of the opposing party's pleadings, but rather it must set forth specific facts showing there is a genuine factual issue for trial. *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009). A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Whether a genuine issue of material fact exists is determined by drawing all inferences in the light most favorable to the nonmoving party. *Havensure, L.L.C. v. Prudential Ins. Co. of Am.*, 595 F.3d 312, 315 (6th Cir. 2010) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

## III. FACTUAL FINDINGS

### A. The Agreement

Melissa Berry and David Cahoon were formally divorced on June 17, 2009. (Doc. #24 at 3). During divorce proceedings, however, it came to Melissa Berry's attention that Cahoon, without her knowledge, recorded activities in certain rooms inside their marital home because he harbored suspicions regarding infidelity. (Doc. #65 at 44-45). Understandably, Melissa Berry and David Cahoon, each with the assistance of counsel, addressed this issue during their divorce proceedings. As a result, they eventually entered into a "Waiver, Release and Agreement" ("the Agreement"), whereby Melissa Berry "waived and released all causes of actions against David S. Cahoon for claims resulting

from, Defendant's, David S. Cahoon, interception of Plaintiff's, Melissa A. Berry, wire, oral or electronic communications," (Doc. #24 at 6), in return for, among other consideration, payment from Cahoon in the amount of $25,000. (Doc. #68-2).

Melissa Berry signed the Agreement on June 2, 2009. (Doc. #68-2 at 8). David Cahoon signed the Agreement on June 5, 2009. (*Id.*). This case was subsequently filed on March 4, 2010. (Doc. #2).

Melissa Berry does not dispute the existence or validity of the Agreement (Doc. #24 at 6-7) and acknowledges she read it before signing. (Doc. #66 at 31). She claims, however, that Cahoon "materially breached the aforementioned Agreement by misrepresenting how long he had a video camera installed in the 'entertainment center in the (parties') bedroom," and that "having discovered the material misstatement of fact in the Affidavit attached to the Agreement and pursuant to § 6 of the Agreement, has elected to pursue claims against Defendant, David S. Cahoon, and the other named Defendants." (Doc. #24 at 7).

There is also no dispute that paragraph 6 of the Agreement provides the following:

6. In the event it is ever determined that the contents of the AFFIDAVIT described in paragraph 1 of this WAIVER, RELEASE AND AGREEMENT contains a material misstatement of fact as to the dates on which the recordings began and ended, or as to the failure to identify any person who assisted David in the installation of any of the equipment used to make such recordings, or as to the failure to identify any person to whom David has ever given possession of any of the media on which such recordings were made or any copies of same, or as to the failure to identify any person who ever had possession of any of the media on which such recordings were made or possession of any copies of same, OR, in the event it is ever determined that in fact David has not surrendered to Melissa all of the copies of such recordings or photographs in his possession, then in any of those events Melissa shall have the right to pursue claims against David in relation to

such failures.  Furthermore, nothing in this WAIVER, RELEASE AND AGREEMENT shall prohibit Melissa from pursuing any valid claims she may have against any person who (a) hereafter publishes, discloses or otherwise disseminates any of such recordings and/or photographs described herein without her consent, or (b) has already published, disclosed or otherwise disseminated any of such recordings and/or photographs described herein and such publication, disclosure or dissemination is currently unknown by her.

(Doc. #68-2 at 4-5).  Finally, it is important to note that Plaintiff Judith Berry was not a party to the Agreement.

### B.    The Affidavit

It is undisputed that the affidavit executed by Cahoon and referenced in the Agreement states, in-part, the following:

1.    Between the dates of May 25, 2007 and, to the best of my knowledge and recollection, June 20, 2007, all of which was during the time I resided at [the marital residence] (hereinafter referred to as "residence"), I caused cameras (with microphones imbedded in them) to be installed in several locations in such premises and, further, using such equipment I caused electronic video and audio recordings to be made of events occurring within the view of such cameras and within the sound range of such microphones. There were four locations in the house at which the cameras and imbedded microphones were located, those being

    a.    in the ceiling tile of the basement office/bedroom over the bed;

    b.    in the framing around the screen in the theatre room in the basement;

    c.    on the mounting bracket for the projector in the theatre room in the basement;

    d.    on top of the entertainment center in the bedroom I was sleeping in at the time (this latter camera was installed only during the time I was absent from the residence on a trip with my oldest son as described in paragraph 6, below).

2.    The first recordings that were made using such equipment while located in my residence were made on or after May 25, 2007, and the last and final

recordings that were made using such equipment while located in my residence were made, to the best of my knowledge and recollection, on June 20, 2007.

3.    The DVRs that were used to make such recordings were removed, to the best of my knowledge, on June 20, 2007. The cameras (which included the microphones) were removed on or about July 29, 2007 when I removed the furniture, washer and dryer and other personal property belonging to me. I never removed the wires/cables that were used to connect the cameras/microphones to the DVRs.

(Doc. #68-1 at 1-2).

### C.    The Alleged Material Breach

In reaching her conclusion that Cahoon "materially breached" the Agreement, Melissa Berry acknowledges she does not have any objective evidence that recordings were taking place outside of the dates provided by Cahoon in his affidavit. (Doc. #65 at 91-92). Melissa Berry confirms that she "ha[s] not been provided with footage that would indicate any other specific dates," (*Id.* at 91), that she does not "have any documentation for any other [dates]," (*Id.* at 92), and that she does not "know of specific dates of recordings made in [her] home other than the dates specified." (*Id.* at 93).

Melissa Berry contends, however, that Cahoon materially misrepresented how long he had the video camera installed in the entertainment center in the master bedroom because, "[h]e specified that this latter camera, referring to the one on top of the entertainment center in the bedroom . . . was installed only during the time [he] was absent from the residence on a trip with [his] oldest son." (*Id.* at 97).

Melissa Berry does not know how long this camera was installed, but "know[s] with certainty that it absolutely was not only installed and working during the time that

6

[Cahoon] was absent from the residence on a trip with [their] oldest son." (*Id.* at 99). Berry "know[s] that one of the recordings that [she has] personally listened to the conversation between [her] mom and [her] had to have occurred between May 31st when [they] met with Michael Wayland for mediation and June 7th when [she] had [her] initial consultation with Dalma Grandjean." (*Id.* at 99).

Melissa Berry acknowledges, however, that this misstatement only came to her attention after entering into the Agreement because she did "some digging." (Doc. #66 at 54). According to Melissa Berry, she "didn't have fresh in her mind" details that would lead her to determine the exact dates of the recordings in the master bedroom, but acknowledges that she could have checked her records and determined the dates prior to entering into the Agreement. (*Id.* at 55). Melissa Berry acknowledges that at the time she entered into the Agreement, she had all the information she used to reach the present conclusion that Cahoon made misstatements in the Affidavit. (*Id.*).

In addition, the recorded conversation between Melissa Berry and her mother, Judith Berry, was face-to-face and took place in the marital home. (*Id.* at 123). No telephonic communication was intercepted or recorded (*Id.* at 123-24), and there is no evidence that any device was installed specifically to intercept telephonic communications. (*Id.* at 126-27).

Melissa Berry further alleges that Cahoon's statement regarding the date he removed cameras from the house - July 29, 2007 - was also erroneous because she believes "he actually removed the furniture, . . . on August 12th [2007]." (*Id.* at 100). Yet

she acknowledges this "could be characterized" as a "typo." (*Id.*).

It is also undisputed that, at the time of entering into the release in June 2009, Melissa Berry told her attorney there were "some dates that are not terribly accurate . . ." (Doc. #66 at 23). However, because Melissa Berry and her attorney were "clearly under the gun as far as running out of time because of all the details, and . . . in danger of having everything dismissed," they were "motivated to get things wrapped up." (*Id.*). According to Melissa Berry, her attorney did not think the difference between the date provided by Cahoon – July 29, 2007 – and the date Melissa Berry believed to be correct – August 12, 2007 – was worth pursuing or changing. (*Id.* at 24).

Finally, aside from the alleged misstatements of Cahoon regarding the date of the video camera being installed in the master bedroom, and the final moving-out date, Melissa Berry finds no other material misstatements. (Doc. #66 at 25).

## IV. LEGAL CONCLUSIONS

### A. Claims of Plaintiff Melissa Berry

"A release ordinarily operates to extinguish a right in exchange for some consideration and effectively operates as an estoppel or a defense to an action by the releasor. As such, it is a contract between parties, enforceable at law subject to the rules governing the construction of contracts." *Task v. National City Bank*, 1994 Ohio App. LEXIS 437, *11 (Ohio Ct. App. 1994) (citing *Kelly v. Med. Life Ins. Co.*, 311 Ohio St.3d 130, 509 N.E.2d 411 (1987)). Accordingly, the first step necessary in evaluating claims brought by Plaintiff Melissa Berry is to consider the effect of the Agreement entered into

as part of her divorce from Cahoon.

There is no dispute as to the validity or terms of the Agreement. There is no dispute that Melissa Berry, as part of the Agreement, "waived and released all causes of actions against David S. Cahoon for claims resulting from, Defendant's, David S. Cahoon, interception of Plaintiff's, Melissa A. Berry, wire, oral or electronic communications." (Doc. #24 at 6). Likewise, it is undisputed that Melissa Berry also released the third parties expressly listed by Cahoon in his Affidavit. (Doc. #68-2 at 2). Equally clear is that paragraph 6 of the Agreement provides Melissa Berry with the right to pursue "claims" against Cahoon "in relation to" the happening of certain events described in the Agreement. (Doc. #68-2 at 4-5).

Melissa Berry acknowledges those aspects of the Agreement but "elected to pursue claims against Defendant, David S. Cahoon, and the other named Defendants" based on discovery of "material misstatement[s] of fact in the Affidavit attached to the Agreement." (Doc. #24 at 7). Melissa Berry argues that Cahoon misrepresented the dates when he had a camera installed in the master bedroom. According to Melissa Berry, while Cahoon stated in his affidavit the time the camera was installed in the master bedroom was "only during the time [he] was absent from the residence on a trip with [his] oldest son as described in paragraph 6," the recording actually took place sometime between May 31, 2007 and June 7, 2007. (Doc. #65 at 99). Melissa Berry also argues that while Cahoon stated in his affidavit "[t]he cameras (which included the microphones) were removed on or about July 29, 2007 when [he] removed the furniture, washer and

9

dryer and other personal property belonging to [him]," he failed to remove his furniture until August 12, 2007.  (*Id.* at 100).

Melissa Berry claims both misstatements were material, both constituted a material breach of the Agreement, and both permit her to bring this lawsuit pursuant to paragraph 6 of the Agreement.  She "believe[s] it is of paramount importance to point out to the Court that the Agreement signed by [her] and Defendant Cahoon specifically held that any false statement regarding dates when certain recordings began and ended would constitute a material breach of said Agreement."  (Doc. #73 at 4).  While this Court understands her argument, it is important to clarify, as explained below, the Agreement does not expressly state that <u>any</u> false statements regarding the dates of <u>any</u> recordings amount to a material breach.

Turning to the language of the Agreement, paragraph 6 provides that "[i]n the event it is ever determined that the contents of the AFFIDAVIT described in paragraph 1 of this WAIVER, RELEASE AND AGREEMENT contains a material misstatement of fact as to the dates on which the recordings began and ended . . . then . . . Melissa shall have the right to pursue claims against David in relation to such failures."  (Doc. #68-2 at 4-5).  Paragraph 6 does not state that a "material misstatement" constitutes a material breach of the Agreement, rather, that Melissa Berry has expressly reserved the right to "pursue claims" should it be determined the Affidavit "contains a material misstatement of fact as to the dates on which the recordings began and ended . . . ." (*Id.* at 5).  This is

an express reservation of rights referenced multiple times throughout the Agreement.[2]

Thus, as it has been determined that paragraph 6 merely reserves the right of Melissa Berry to "pursue claims" relating to the happening of certain events, it must next be determined whether any of those specified events in paragraph 6 actually occurred. Pursuant to the terms of paragraph 6, Melissa Berry has the right to "pursue claims" if "it is ever determined that the contents of the AFFIDAVIT . . . contains a material misstatement of fact as to the dates on which the recordings began and ended . . ." (Doc. #68-2 at 5).

Therefore, this Court must determine whether the terms of paragraph 6 are unambiguous. *See Alexander v. Buckeye Pipeline Co.*, 53 Ohio St. 2d 241, 246, 374 N.E.2d 146 (1978) ("[W]here the terms in an existing contract are clear and unambiguous, [a] court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties."); *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St. 3d 397, 405, 953 N.E.2d 285 (2011) ((quoting *Alexander*, 53 Ohio St.2d 241, para. 2 of syllabus) ("Common, undefined words appearing in a contract 'will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidence from the face or overall contents' of the agreement.")))

---

[2] "and subject to the provisions of paragraph 6, below . . . ." (Doc. #68-1 at 1, Agreement, para. 1); "and in consideration of David causing such payments to Melissa, and subject to the reservation of rights set forth in paragraph 6, below . . . ." (*Id.* at 2, para. 2); "and in consideration of David causing such payment to Melissa, and subject to the reservation of rights set forth in paragraph 6, below . . . . " (*Id.*, para. 3); "and in consideration of David causing such payments to Melissa, and subject to the reservation of rights set forth in paragraph 6, below . . . ." (*Id.* at 3-4, para. 4).

Although the term "the recordings" is not expressly defined, its plain meaning guides the way. *Toledo Edison*, 129 Ohio St. 3d at para. 2 of syll. The term "the recordings" – plural – in paragraph 6 of the Agreement refers to all audio and video recordings in the aggregate. "The recordings" does not refer to any specific recording, made by any specific camera, in any specific location, but to <u>all</u> of the recordings, made by all of the cameras, in all of the locations. Accordingly, "the dates on which the recordings began and ended" refers to the dates all recordings, in the aggregate, began – May 25, 2007 – and ended – June 20, 2007. This is evidenced throughout the Agreement, and further supported by the simple fact that Cahoon does not provide dates for the parenthetically referenced trip, yet specifically sets forth the dates of May 25, 2007 and June 20, 2007 numerous times throughout the Affidavit and Agreement.[3]

As such, Melissa Berry can only "pursue claims . . . in relation to such failures" if it is determined that there is "a material misstatement of fact as to the dates on which <u>the recordings</u> began and ended." (*Id.*) (emphasis added).

Melissa Berry contends paragraph 6 of the Agreement provides her with the right

---

[3] In the Affidavit (referenced in the Agreement): "Between the dates of May 25, 2007, and to the best of my knowledge and recollection, June 20, 2007, . . . I caused electronic video and audio recordings to be made . . . . ." (Doc. #68-1 at 1, para. 1); "The first recordings that were made . . . were made on or after May 25, 2007, and the last and final recordings that were made . . . were made, to the best of my knowledge and recollection, on June 20, 2007." (*Id.*, para. 2); "The DVRs that were used to make such recordings were removed, to the best of my knowledge, on June 20, 2007." (*Id.*, para. 3); "Thus, I have no way to be certain that in fact the last recording was made on June 20, 2007 although I believe that it was." (*Id.* at 1-2, para. 4). In the Agreement: "Between the dates of May 25, 2007 and on or about June 20, 2007 . . . David . . . caused electronic video, audio and/or or [sic] tape recordings to be made . . . ." (Doc. #68-2 at 1, para. 1).

to "pursue claims" against Terrill, Woodward, and APA because Cahoon misrepresented the time a camera was installed in an entertainment center in the master bedroom. In particular, Melissa Berry asserts that the following statement made by Cahoon is incorrect[4]:

> There were four locations in the house at which the cameras and imbedded microphones were located those being . . .
>
> > d. on top of the entertainment center in the bedroom I was sleeping in at the time (this latter camera was installed only during the time I was absent from the residence on a trip with my oldest son as described in paragraph 6, below).

(Doc. #68-1 at1).

According to Melissa Berry, while Cahoon's "specific references [in the Affidavit] to the only time he's admitting recording [her] in the bedroom . . . was during the trip," she "know[s] when the trip was, and . . . that the conversations recorded in [her] bedroom are not in sync with the window in time he specified." (Doc. #65 at 103). Melissa Berry claims she "know[s] that the conversation recorded in that part of the house, in [her] bedroom, occurred between May 31st and June 7th, therefore, precluding it from being possible that it occurred [during the trip] between June 18th and 20th." (Doc. #65 at 101).

Even if Cahoon's statement was incorrect and can be considered material, Melissa Berry cannot "pursue claims" because his misstatement is not one "as to the dates on

---

[4] Cahoon reiterates this in paragraph 6 of the Affidavit: "While DVR #2 was in use I personally installed DVR #1 and a camera and the necessary cable/wires in the bedroom in the residence in which I was sleeping and did use it once while I was absent from the residence on a trip with my oldest son to make recordings of events occurring in that bedroom." (Doc. #68-1 at 2).

which the recordings began and ended." In fact, there is no genuine dispute that all the recordings occurred within the dates Cahoon provided in his affidavit: May 25, 2007 to June 20, 2007. (Doc. #66 at 21). Melissa Berry recognizes the dates are correct and has made clear she has no evidence "indicat[ing] that any recordings were made outside of those dates." (*Id.*). Since Cahoon's misstatement, even if material, is not one "as to the dates on which the recordings began and ended," Melissa Berry is not permitted to "pursue claims" under paragraph 6 of the Agreement.

The second misstatement Melissa Berry claims Cahoon provided in the Affidavit is that "[t]he cameras (which included the microphones) were removed on or about July 29, 2007 when [he] removed the furniture, washer and dryer and other personal property belonging to [him]." (*Id.* at 100). According to Melissa Berry, Cahoon did not actually remove his furniture until August 12, 2007. (*Id.*). Yet assuming Cahoon incorrectly identified the date upon which he removed the cameras[5] as July 29, 2007 (instead of August 12, 2007), and assuming such misstatement was material, the Agreement does not provide Melissa Berry with the "right to pursue claims" against Cahoon for his misstatement. Again, this is true because his misstatement did not constitute a "misstatement of fact as to the dates on which the recordings began and ended." (*Id.*).

In addition, the parties argue about whether a material breach occurred. "Generally, a 'material breach of contract' is a failure to do something that is so

---

[5] There is no genuine dispute that while the camera units were not removed until July 29, 2007, or August 12, 2007, all recordings ceased upon the removal of the digital video recorders (DVRs) from the house on June 20, 2007.

fundamental to a contract that the failure to perform defeats the essential purpose of the contract or makes it impossible for the other party to perform." *Marion Family YMCA v. Hensel*, 178 Ohio App. 3d 140, 142-43 (Ohio Ct. App., Marion County 2008) (citing Williston on Contracts, Chapter 2 63:3). Thus, for example, while it is clear that Cahoon had a contractual obligation to pay Melissa Berry the agreed upon amount of $25,000, and that a hypothetical failure to perform this obligation would be a material breach, the parties have not discussed how the misstatement of facts in the Affidavit constitutes a breach of the Agreement, let alone a material one.

APA Defendants seem not to contest that a misstatement of facts in the Affidavit could amount to a breach. Instead, they simply argue this breach was not material. (Docs. #68, 74). Assuming the misstatement constituted a breach, and that Melissa Berry could "pursue claims" relating to it, her claims would still be barred because the misstatement and any resulting breach were not material. For example, there is nothing to indicate recordings took place outside the dates set forth in Cahoon's Affidavit (May 25, 2007 to June 20, 2007), nor that Cahoon failed to deliver all copies of the recordings in his possession at the time of entering into the Agreement. Melissa Berry does not allege to have found new recordings not previously disclosed. She instead just recently figured out that the recording she had in her possession at the time of entering into the Agreement was possibly made a few weeks earlier than Cahoon indicated. Even so, the recording was made within the dates of May 25, 2007 to June 20, 2007. Such an alleged misstatement cannot be said to have defeated the essential purpose of the Agreement and

did not constitute a material breach.  *See Hensel*, 178 Ohio App.3d at 142-43.

Accordingly, as the facts of this case viewed in the light most favorable to Plaintiff Melissa Berry do not provide her with the right to "pursue claims" pursuant to the terms of paragraph 6 of the Agreement, Defendants Terrill, Woodward, and APA are entitled to summary judgment as it relates to all claims she raises.

### B.      Claims of Plaintiff Judith Berry

Unlike the claims of Melissa Berry, which are barred against APA Defendants pursuant to the terms of the Agreement she entered into with Cahoon, Plaintiff Judith Berry has not released her potential claims.  Accordingly, the Agreement has no effect on her ability to bring this case against APA Defendants.

Turning to the facts of this case as they relate to Judith Berry's claims, it is undisputed that Judith Berry was recorded while having a conversation with her daughter, Melissa Berry.  The location of this conversation, however, remains in dispute.

### 1.      Disputed Location of the Recorded Conversation

David Cahoon contends the recorded conversation took place in the basement bedroom/office of the marital home because "that's the only place where there was any recording device that captured audio" during that period of time.  (Doc. #63 at 61-62). Cahoon also claims that audio and video of the conversation were captured by the DVR, but when exporting the raw footage he only kept the audio portion.  (*Id.* at 62).

Woodward claims that he, Cahoon, and Terrill installed three cameras in the basement area of Cahoon's house (Doc. #67 at 21) but denies that he or Terrill assisted in

any way with setting up audio equipment anywhere in the house.  (Doc. #67 at 31).  The cameras, however, contained embedded microphones, and Woodward acknowledges the cameras "had [audio] capability," although, "[t]he DVR player did not."  (Doc. #67 at 31).

Judith Berry and Melissa Berry believe that the recorded conversation occurred in the master bedroom.

### 2.	The Electronic Communications Privacy Act

The Electronic Communications Privacy Act of 1986, an amendment to Title III of the Omnibus Crime Control and Safe Streets Act of 1968, provides that a claim can be made against any person who:

> (a) intentionally intercepts, endeavors to intercept, or procures any other persons to intercept or endeavor to intercept, any wire, oral, or electronic communication . . . .
>
> (c) intentionally discloses . . . to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;
>
> (d) intentionally uses . . . the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection . . . .

18 U.S.C. § 2511(1)(a),(c),(d).  Under the ECPA, an "oral communication" is defined as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include electronic communication."  18 U.S.C. §

2510(2).  A "wire communication" is defined as:

> any aural transfer made in whole or in part through the use of facilities for the transmission of communications by aid of wire, cable, or other like connection between the point of origin and the point of reception (including the use of such connection in a switching station) furnished or operated by any person engaged in providing or operating such facilities for the transmission of interstate or foreign communications or communications affecting interstate or foreign commerce and such term includes any electronic storage of such communication.

18 U.S.C. § 2510(1).

Plaintiff Judith Berry claims that APA Defendants violated the ECPA because they "covertly installed electronic devices in a home where they knew an individual was going to be surveyed without her knowledge."  (Doc. #73 at 10).  APA Defendants argue that "[r]ecovery is not available, however, because the DVR player installed by APA Defendants was only capable of recording video, and video surveillance alone is not a communication within the meaning of the ECPA."  (Doc. #68 at 15).

Although APA Defendants' argument has merit to the extent their involvement was limited to the installation of DVRs only capable of recording video, it fails to take into account the fact that they also installed cameras in the basement that contained embedded microphones capable of intercepting a conversation.

Whether the recorded conversation took place in the basement bedroom/office or master bedroom therefore becomes crucial in determining whether APA Defendants could have violated the ECPA.  For example, if the recorded conversation took place in the master bedroom  – where APA Defendants did not install any microphones or audio recording devices – summary judgment as to claims under the ECPA would be proper

18

because, as noted by APA Defendants, "video surveillance alone is not a communication within the meaning of the ECPA." (Doc. #68 at 15). On the other hand, if the recorded conversation took place in the basement bedroom/office – where APA Defendants acknowledge to having installed cameras with embedded microphones – summary judgment would not be proper because, depending on APA Defendants' knowledge and intentions relating to the installation of these cameras (with embedded microphones), such actions may be viewed as a violation of 18 U.S.C. § 2511(1)(a).

Whether Judith Berry's conversation took place in the basement or the master bedroom simply cannot be determined based on the evidence available to this Court. Likewise, the fact remains in dispute: Judith and Melissa Berry contend the recording took place in the master bedroom, Cahoon argues it took place in the basement. Because this Court must draw all inferences in the light most favorable to the nonmoving party – Judith Berry – it must assume the recorded conversation could have taken place in the basement bedroom/office. As such, audio would have therefore been captured by the microphones embedded in the cameras installed by APA Defendants. Accordingly, APA Defendants are not entitled to summary judgment as to claims Plaintiff Judith Berry brings under the ECPA.

### 3.    Invasion of Privacy: Intrusion into Seclusion

"In Ohio, the tort of invasion of privacy includes four distinct causes of action: (1) intrusion into plaintiff's seclusion, solitude, or private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity that places plaintiff in a false

light; and (4) appropriation of plaintiff's name or likeness for defendant's advantage."
*Yoder v. Ingersoll-Rand Co.*, 1998 U.S. App. LEXIS 31993 *5 (6th Cir. 1998) (internal citations omitted).  "Ohio recognizes the tort of invasion of the right to privacy for 'the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.'" *Charvat v. NMP, LLC,* 656 F.3d 440, 452 (6th Cir. 2011) (quoting *Housh v. Peth*, 165 Ohio St. 35, 133 N.E.2d 340 syllabus para. 2 (Ohio 1956)).  "'One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'" *Charvat*, 656 F.3d at 452-453 (citing *Sustain v. Fee*, 69 Ohio St. 2d 143, 431 N.E.2d 992, 993-94 (Ohio 1983) (citing Restatement (2d) of Torts § 652B (1977))).

Turning to the facts of this case, it is undisputed that Judith Berry's conversation with her daughter, Melissa, was recorded somewhere inside Melissa Berry and David Cahoon's marital residence.  As discussed previously, where this conversation occurred and what specific camera/microphone recorded it still remain in question.  Again, if the camera (with embedded microphones) that recorded this conversation was in the basement, as stated by Cahoon, then this would mean that APA Defendants assisted with its installation.  (*See* Doc. #67 at 21).  Such a disputed fact, therefore, precludes granting summary judgment to APA Defendants as to this claim because a jury could reasonably conclude that the camera they installed in the basement was the one that recorded Judith

Berry, and that such an act was an "intrusion" that is "highly offensive to a reasonable person."

### 4. Invasion of Privacy: Public Disclosure of Embarrassing Private Facts

"[T]he public disclosure variety of the tort of invasion of privacy has at least three requirements: (1) a clearly private fact; (2) public disclosure of the private fact; and (3) a showing that the matter made public is one which would be highly offensive and objectionable to a reasonable person." *Yoder*, 1998 U.S. App. LEXIS at *6 (internal citations omitted). As detailed in *Yoder*, the Ohio Court of Appeals defines "'[p]ublicity, as used in the first prong, [to] mean[] 'communicating the matter to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge as opposed to 'publication' [as used in defamation cases and] meaning any communication by the defendant to a third person.'" *Yoder*, 1998 U.S. App. LEXIS at *6-*7 (quoting *SETA v. Reading Rock, Inc.*, 100 Ohio App. 3d 731, 654 N.E.2d 1061, 1068 (Ohio Ct. App. 1995) (brackets in original)). This distinction is also made in the Restatement of Torts.[6]

Aside from David Cahoon, Judith Berry, Melissa Berry, and various attorneys,

---

[6] "'Publicity,' as it is used in this Section, differs from 'publication,' as that term is used . . . in connection with liability for defamation. 'Publication,' in that sense, is a word of art, which includes any communication by the defendant to a third person. 'Publicity,' on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge . . . Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." *Yoder*, 1998 U.S. App. LEXIS 31993 at *7 (quoting RESTATEMENT (SECOND) OF TORTS § 652D, comment a).

there is no evidence that any individual other than those listed by Cahoon in his Affidavit ever possessed or viewed any portion of the tapes.[7]  Even assuming every person listed by Cahoon listened to the specific audio recording of Judith Berry, dissemination to such a small group of people is not a public disclosure.  Moreover, there is no evidence there was even a private fact about Judith Berry in the conversation which could be considered "highly offensive and objectionable to a reasonable person."   Accordingly, APA Defendants are entitled to summary judgment as to this claim because there is no indication the recorded conversation contained a private fact about Judith Berry which could be considered "highly offensive and objectionable to a reasonable person," and even if it did, any disclosure of such a fact was not disclosed to the "public at large."

### 5.     Intentional Infliction of Serious Emotional Distress

"In Ohio, a plaintiff claiming intentional infliction of emotional distress must show that '(1) the defendant intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to the plaintiff; (2) defendant's conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) defendant's conduct was the proximate cause of plaintiff's psychic injury; and (4) plaintiff's emotional distress was serious and of such a nature that no reasonable

---

[7]  Cahoon stated that "[t]here are three individuals, to [his] knowledge, who have viewed brief portions of the video, those individuals being Rick Hazen, Rita Hazen and Craig Owings, each of whom were shown brief portions of the videos by me and none of them ever possessed any of the media on which such recordings were made or any copies of them."  (Doc. #68-1 at 3).  Cahoon also gave possession of DVR #1 to Brent Thurston.  (*Id.*).

person could be expected to endure it.'" *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099 (internal citations omitted). "Serious emotional distress describes emotional injury which is both severe and debilitating. Thus, serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case. A non-exhaustive litany of some examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia." *Paugh v. Hanks*, 6 Ohio St. 3d 72, 451 N.E.2d 759, 765 (1983). "While Ohio does not require expert medical testimony to support an intentional infliction of emotional distress claim, a plaintiff must at least provide some evidence beyond his or her own testimony." *Talley*, 542 F.3d at 1099 (citing *Buckman-Peirson v. Brannon*, 159 Ohio App. 3d 12, 822 N.E.2d 830, 841 (2004)).

Not only has Judith Berry not provided any expert medical testimony regarding the issue, but her own testimony does not support finding she suffered any serious emotional distress as a result of the recordings. For example, she acknowledges she has not suffered any direct, immediate injury, as a result of learning there was recording equipment in her daughter's house (Doc. #64 at 21), and the "indirect" harm she claims to have suffered is limited to relatively mild trouble sleeping – for which she is not even sure her primary care physician prescribed any medication. (*Id.* at 23). Aside from seeing her family doctor about three times regarding her inability to fall asleep, she acknowledges she has not seen any other healthcare provider regarding any condition that

relates to discovery of the recording devices in her daughter's house. (*Id.* at 25). While the allegations of this case are troubling, the record lacks probative evidence revealing that Judith Berry suffered any serious emotional distress as a result of the alleged conduct. *See Paugh*, 6 Ohio St. 3d 72, 451 N.E.2d at 765. Accordingly, APA Defendants are entitled to summary judgment on this claim.

## V. CONCLUSIONS

As Plaintiff Melissa Berry's claims are barred by the Agreement she entered into with Cahoon, APA Defendants are entitled to summary judgment as to all claims she raises.

Plaintiff Judith Berry was not a party to the Agreement and, therefore, she is not precluded from bringing claims against APA Defendants. APA Defendants are entitled to summary judgment as to the claims Judith Berry raises for intentional infliction of emotional distress and invasion of privacy (public disclosure of embarrassing private facts). APA Defendants are not entitled to summary judgment as it relates to the claims Judith Berry brings under the Electronic Communications Privacy Act, or for invasion of privacy (intrusion into seclusion). These two claims remain for trial.

Plaintiffs' claims against Defendant David Cahoon, as well as Defendant Cahoon's counterclaims against Plaintiff Melissa Berry, also remain to be resolved by jury trial scheduled for March 26, 2012. At present, no other motions remain pending.

### IT IS THEREFORE ORDERED THAT:

1.       Defendants Steven E. Terrill, James Woodward, and American Protective

Agency, Inc.'s Motion for Summary Judgment (Doc. #68) is GRANTED as to all of Plaintiff Melissa A. Berry's claims against them and as to Plaintiff Judith A. Berry's claims for invasion of privacy (public disclosure of embarrassing private facts) and intentional infliction of emotional distress;

2. Defendants Steven E. Terrill, James Woodward, and American Protective Agency, Inc.'s Motion for Summary Judgment (Doc. #68) is DENIED as to Plaintiff Judith A. Berry's claims for invasion of privacy (intrusion into seclusion) and violation of the Electronic Communications Privacy Act;

3. Defendant Beavercreek Christian Church's Motion for Summary Judgment (Doc. #62) is DENIED as moot;

4. The jury trial scheduled for **March 26, 2012** is CONFIRMED. Trial shall begin at 9:30 a.m. in Courtroom No. 5, United States Federal Building and Courthouse, 200 West Second St., Dayton, OH 45402; and

5. The remaining dates set by the most recent scheduling Order (Doc. #77) are likewise CONFIRMED.


February 22, 2012

                              s/Sharon L. Ovington
                                 Sharon L. Ovington
                     United States Magistrate Judge